**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

|  |  |  |
|---|---|---|
| VICTOR ZILBERMAN, individually and on behalf of all others similarly situated, | : | Case No.: |
|  | : |  |
|  | : | Date Filed: |
| *Plaintiff,* | : |  |
|  | : | *Civil Action* |
| -against- | : |  |
|  | : | **Class Action Complaint and** |
| REDBUMPER, LLC, a Delaware limited liability company, | : | **Demand for Jury Trial** |
|  | : |  |
|  | : |  |
| *Defendant.* | : |  |
|  | : |  |

-----------------------------------------------------------------x

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, Victor Zilberman, individually and on behalf of all others similarly situated, brings this Class Action Complaint and Demand for Jury Trial against Defendant, RedBumper, LLC, a Delaware limited liability company ("RedBumper"), to put an end to its unlawful practice of placing unsolicited telemarketing calls to consumers nationwide. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1.      Defendant RedBumper operates a website and mobile application called CarOffer, which is a service that purports to match consumers who are looking to sell their vehicles with interested third party dealerships.

2.      While Defendant's business model appears to be legitimate, it has unfortunately resorted to an age-old tactic to attract new customers to its sales platform: making unsolicited

telemarketing calls to consumers' telephones. In order to make such calls, Defendant first collects consumers' phone numbers by "scraping" them (*i.e.*, using software to collect data from a website) from car listings posted on the popular classified website craigslist.com. Then, Defendant places pre-recorded robocalls to those numbers. For the sake of clarity, Defendant is *not* offering to buy a seller's vehicle; rather, it is offering a competing service for selling it. In fact, Defendant does not buy cars at all through its CarOffer application or website.

3.      Because Defendant makes unsolicited robocalls to consumers' telephones without prior express written consent, it has, and continues to, violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

4.      The TCPA was enacted to protect consumers from unsolicited and repeated telephone calls exactly like those alleged in this case. Defendant made these calls despite the fact that neither Plaintiff, nor the other members of a putative Class of consumers (defined below), ever provided Defendant with their prior express written consent to be called. By making the phone calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

5.      In response to Defendant's unlawful conduct, Plaintiff has filed the instant lawsuit seeking an injunction requiring Defendant to cease all unsolicited calling activities, as well as an award of statutory damages to the members of the Class as provided under the TCPA, together with costs and reasonable attorneys' fees.

## THE PARTIES

6.      Plaintiff Victor Zilberman is a natural person and citizen of the State of New York.

7.      Defendant RedBumper, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 2701 East Plano Parkway, Suite 100, Plano, Texas 75074. RedBumper conducts business throughout this District, the State of New York, and the United States.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under the TCPA, which is a Federal statute. This Court has personal jurisdiction over RedBumper because it conducts significant amounts of business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because RedBumper conducts significant business transactions in this District, solicits business in this District, and because the improper conduct alleged in this Complaint occurred in this District. Venue is additionally proper because Plaintiff resides in this District (in Kings County, New York).

## FACTUAL BACKGROUND

10.      RedBumper claims to be one of the "fastest growing technology companies in the automotive industry" that offers services to, among other things, make it easier for consumers to buy and sell vehicles. One such service is CarOffer, which is web-based marketplace for consumers to list vehicles for sale and allow third party dealerships to buy them.

11.      While Defendant utilizes traditional advertising methods to promote CarOffer, it

also relies on an invasive and illegal method of advertising to sell its car selling platform: unsolicited telemarketing campaigns.

12.     Specifically, Defendant places unsolicited telephone calls to consumers' phones, which feature pre-recorded messages purporting to help consumers sell their vehicles. Defendant makes these calls from several numbers, including "(469) 606-5167."

13.     When the recipient answers one of these calls, the recording states that the call is coming from "CarOffer.com" and that it has "dealers standing by" to give the recipient a cash offer for their vehicle. The promotional recording then describes the features and perks of using its service, including that it is "hassle free" and that there are "no sales commissions" related to the sale of an individual's vehicle. The recording then instructs the call recipient to download its mobile software application, "sit back and wait for offer," "drop off the car," and "collect the check." Again, the purchase offer *does not* come from CarOffer; instead, it comes from an unrelated third party.[1] Defendant's service is attempting to compete with Craigslist to aid consumers in selling cars. In essence, Defendant's conduct is no different than if eBay contacted a consumer selling a car on Craigslist to persuade them to sell the car through its auction website (where consumers and dealerships are also looking to buy cars).[2]

14.     Consumers who received these calls from Defendant did not provide prior express

---

[1]     As stated by Defendant in a press release, "The CarOffer™ mobile app will give consumers the ability to scan, photo and submit vehicles they wish to sell in minutes. Dealers with the CarOffer™ tool will have the exclusive ability to bid and buy these units within certain exclusive market areas." *See CarOffer™ Gives Dealers the Ability to Buy Directly from Consumers*, www.nadaconvention.org/mynadaplanner2014/public/Booth.aspx?IndexInList=152&FromPage=nz_ALP ressReleases.aspx&BoothID=120340&Task=PressReleaseDetails&PRID=986 (last visited on October 17, 14).

[2]     In fact, Defendant's own website promotes its product as a better alternative (and direct competitor) to Craigslist, stating, "Have a car you'd like to sell? It's a hassle bringing it to a dealer and spending half your day. It's distracting to a much larger degree to put your car on Craigslist and deal with all of the calls, emails for tire kickers. We have the answer to this conundrum." *See How it Works*, http://blog.caroffer.com/how-it-works (last visited on October 17, 14).

written consent to receive such calls. While consumers often place their telephone numbers on Craigslist, they are provided so that a person, *and only such person*, who is looking to actually purchase the vehicle can contact them. By contrast, Defendant is not looking to purchase any vehicles appearing on Craigslist, but instead, is only attempting to sell consumers its own competing service.

15.     Additionally, when consumers publish an advertisement on Craigslist, they often check a box indicating that they are not interested in being contacted about other offers or services. Doing so causes a notice to appear on the individual's Craiglist advertisement that states—immediately below their contact information—"do NOT contact me with unsolicited services or offers."

16.     Simply put, consumers do not provide their phone numbers to Defendant. Instead, Defendant uses a method known as "scraping" to collect phone numbers from the online classified website craigslist.com. In order to "scrape" a website, Defendant employs software, commonly referred to as a "bot," to scan webpages that meet certain criteria (in this case, those selling vehicles) for consumers' contact information such as their phone numbers. The bot then collects that information and feeds it back into Defendant's database where it can be used to make calls.

17.     These unscrupulous practices have led to significant backlash from consumers.[3] For instance, a significant number of complaints—such as the following—appear on popular online complaint forums:[4]

---

[3]     Additionally, Defendant's corporate predecessor received a citation from the Federal Communications Commission in 2010 regarding identical unlawful robocalls, which directed all such calls to cease. *See March 15, 2010 FCC Citation Issued to Lanelogic, Inc., et al.*, https://apps.fcc.gov/edocs_public/attachmatch/DOC-312997A1.pdf (last visited on October 17, 14).

[4]     *See, e.g., 800notes Directory of UNKNOWN Callers*, http://800notes.com/Phone.aspx/1-469-606-

- "469-606-5167 left a huckster type message on my machine. They are harvesting numbers from Craigslist if you list your car for sale . . . .";

- "469-606-5167 called trying to get me to tell them all about my car on Craigslist . . . .";

- "This phone number is for caroffer.com. They solicit you because you have something for sale on Craigslist. I have a vehicle for sale that is listed on craigslist.com however I will be reporting them because I have stated very clear that I do not want outside advertising . . . .";

- "Left a voicemail on my cell telling me what steps to take so they can buy my car. Yes, I have an ad on Craigs List, but I recognize spam when I hear it!";

- "It's a canned message from a company that wants to buy your vehicle. I posted one for sale on Craigslist and was called by this company.";

- "They called me yesterday and again just called me (my car is for sale on Craigs[list]).";  and

- "Craigslist Phone Harvester offering to buy your car like carmax paying cash through dealer network".

18.     The consumer complaints are not surprising given that Plaintiff and the other putative Class members did not consent to, request, or otherwise desire or permit Defendant to call their telephones. Indeed, neither Plaintiff, nor the other members of the putative Class, ever consented to receive these robocalls (or any other calls) at the telephone numbers called by Defendant and/or its agents.

**PLAINTIFF ZILBERMAN'S EXPERIENCE**

19.     Starting in or around August 2014, Plaintiff began receiving telephone calls on his cellular telephone from the phone number "(469) 606-5167." The calls persisted for three days, receiving multiple calls each day.

20.     Several of the calls went to his voicemail where Defendant left pre-recorded messages (substantially similar to those described above). On another occasion, Plaintiff answered the phone and heard the same pre-recorded message. In total, Plaintiff received at least

5167 (last visited October 9, 2014).

six separate calls from Defendant.

21.     At the time he received the calls, Plaintiff had a vehicle listed for sale on Craigslist. The advertisement listed his cellular telephone number. Immediately below the phone number appeared a notification stating "do NOT contact me with unsolicited services or offers," which Plaintiff affirmatively included on the listing.

22.     Plaintiff only provided his telephone number on the advertisement for persons legitimately interested in buying his car to call him. Plaintiff did not provide his prior express written consent to be called by Defendant and did not interact with Defendant in any way prior to receiving a call from it.

23.     Defendant is and was aware that it is placing unsolicited robocalls to Plaintiff and other consumers without their prior express written consent.

## CLASS ALLEGATIONS

24.     **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons in the United States who: (1) posted a vehicle for sale on craigslist.com; (2) included the statement "do NOT contact me with unsolicited services or offers" on his or her craigslist.com listing; and (3) who received a telephone call on his or her cellular telephone; (4) promoting CarOffer.com; (5) that telephone call featured a pre-recorded or artificial voice.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally

adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

25.   **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendant's records.

26.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to the following:

   (a)   whether Defendant's conduct violated the TCPA;

   (b)   whether Defendant made calls featuring an artificial or pre-recorded voice;

   (c)   whether Defendant and/or its agents systematically made phone calls to persons who did not previously provide Defendant and/or its agents with their prior express written consent to receive such phone calls; and

   (d)   whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

27.   **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

28.   **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class,

and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

29.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward members of the Class. The factual and legal bases of Defendant's liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.

30.     **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not

impossible, for the individual members of the Class to obtain effective relief from Defendant. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

31.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

32.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

33.     Defendant made unsolicited and unwanted telemarketing calls to the telephone numbers belonging to Plaintiff and the other members of the putative Class without their prior express written consent.

34.     Defendant made these unsolicited telemarketing calls to the telephone numbers belonging to Plaintiff and the other members of the Class using a prerecorded or artificial voice, more commonly known as a "robocall."

35.     By making, or having made on its behalf, unsolicited robocalls utilizing an artificial or prerecorded voice to Plaintiff's and the putative Class's telephones without prior express written consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of

Defendant's unlawful conduct, Plaintiff and the other members of the Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA.

36.     Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Victor Zilberman, on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Victor Zilberman as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate 47 U.S.C. § 227;

C.     Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

D.     An award of actual and statutory damages;

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.     Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.     Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**VICTOR ZILBERMAN**, individually and on behalf of all others similarly situated,

Dated: October 17, 2014

By: _Matthew Wurgaft (MW-1734)_____

Matthew A. Wurgaft (MW-1734)
mattwurgaft@gmail.com
KRAVIS & FILE, P.C.
1 Meadowlands Plaza, Suite 200
East Rutherford, New Jersey 07073
Tel: 201.340.2664
Fax: 201.340.2666

Rafey S. Balabanian*
rbalabanian@edelson.com
Ari J. Scharg*
ascharg@edelson.com
John C. Ochoa*
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1309 Jericho Turnpike, 2nd Floor
New Hyde Park, New York 11040
Tel: 877.333.9427
Fax: 888.498.8946

*Application for admission pro hac vice to be filed.*