**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
VICTOR ZILBERMAN, individually and on :     Case No.: 1:14-cv-6091-KAM-SMG
behalf of all others similarly situated, :
:
      *Plaintiff,* :
:     Civil Action
   *v.* :
:     Class Action Complaint and
CAROFFER, LLC, a Delaware limited :     Demand for Jury Trial
liability company, and PEARL TECHNOLOGY :
HOLDINGS LLC, a Texas limited liability :
company :
:
      *Defendants.* :
:
----------------------------------------------------------------x

## <u>FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff Victor Zilberman brings this Class Action Complaint and Demand for Jury Trial

against Defendants CarOffer LLC ("CarOffer") and Pearl Technology Holdings LLC ("Pearl")

(collectively, "Defendants") to put an end to their unlawful practice of placing unsolicited

telemarketing calls to consumers nationwide. Plaintiff, for his First Amended Complaint, alleges

as follows upon personal knowledge as to himself and his own acts and experiences and, as to all

other matters, upon information and belief, including investigation conducted by his attorneys:

### NATURE OF THE ACTION

1.      Defendants CarOffer operates a website and mobile application called CarOffer,

which is a service that purports to match consumers who are looking to sell their vehicles with

interested third party dealerships.

2.      Defendant Pearl is a software company that launched the CarOffer mobile app,

and has a stated goal to "incubate, develop and distribute multiple software initiatives across

different sectors of the automotive industry in 2014."[1] As described below, Pearl provides capital, advertising, business consulting, and development services to CarOffer, and is heavily involved in CarOffer's operations.

3.      While Defendants' business model appears to be legitimate, they have unfortunately resorted to an age-old tactic to attract new customers to their sales platform: making unsolicited telemarketing calls to consumers' telephones. In order to make such calls, Defendants first collect consumers' phone numbers by "scraping" them (*i.e.*, using software to collect data from a website) from car listings posted on the popular classified website craigslist.com. Then, Defendants place pre-recorded robocalls to those numbers. For the sake of clarity, Defendants are *not* offering to buy a seller's vehicle; rather, it is offering a competing service for selling it. In fact, Defendants do not buy cars at all through their CarOffer application or website.

4.      Because Defendants make unsolicited robocalls to consumers' telephones without prior express written consent, they have violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

5.      The TCPA was enacted to protect consumers from unsolicited and repeated telephone calls exactly like those alleged in this case. Defendants made these calls despite the fact that neither Plaintiff, nor the other members of a putative Class of consumers (defined below), ever provided Defendants with their prior express written consent to be called. By making the phone calls at issue in this Complaint, Defendants caused Plaintiff and the other members of the Class actual harm, including the aggravation and nuisance that necessarily

---

[1] *See* http://www.prweb.com/releases/2014/07/prweb12035534.htm (last visited on April 28, 2015).

accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

6.      In response to Defendants' unlawful conduct, Plaintiff filed the instant lawsuit seeking an injunction requiring Defendants to cease all unsolicited calling activities, as well as an award of statutory damages to the members of the Class as provided under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

7.      Plaintiff Victor Zilberman is a natural person and citizen of the State of New York.

8.      Defendant CarOffer, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 2701 East Plano Parkway, Suite 100, Plano, Texas 75074. CarOffer conducts business throughout this District, the State of New York, and the United States.

9.      Defendant Pearl Technology Holdings LLC is a limited liability company existing under the laws of the State of Texas with its principal place of business located at 2701 East Plano Parkway, Suite 100, Plano, Texas 75074. Pearl conducts business throughout this District, the State of New York, and the United States.

10.      At the times relevant to this Complaint, Pearl was the sole member and 100% owner of CarOffer.

## JURISDICTION AND VENUE

11.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under the TCPA, which is a federal statute.

3

12.     This Court has personal jurisdiction over CarOffer because it conducts significant amounts of business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

13.     This Court has personal jurisdiction over Pearl because it conducts significant amounts of business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District. Additionally, this Court also has personal jurisdiction over Pearl because it is the alter-ego of and/or is in a principal-agent relationship with CarOffer, the entity that placed the pre-recorded call to Plaintiff in this District.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants conduct significant business transactions in this District, solicit business in this District, and because the improper conduct alleged in this Complaint occurred in this District. Venue is additionally proper because Plaintiff resides in this District (in Kings County, New York).

## FACTUAL BACKGROUND

### I.     Pearl and CarOffer operated jointly to promote CarOffer's products and services

15.     CarOffer is web-based marketplace for consumers to list vehicles for sale and allow third party dealerships to buy them.

16.     Pearl is a company that provides funding, support, advertising services, and consulting services to its brands, one of which is CarOffer.

17.     In approximately January 2014, during the time when CarOffer began operations, Pearl had no paid employees, and had a sole owner—Bruce Thompson. As explained below, Pearl existed to manage and operate its brands, including CarOffer, and to attempt to shield it and its owners from liability.

18.     In early 2014, Pearl launched the CarOffer brand and was the primary developer

and operator of the CarOffer website and mobile application.

19.     In addition, Pearl owned all of CarOffer's trademarks and had control over when and where those trademarks could be used.

20.     Pearl (through its sole owner Bruce Thompson), also controlled CarOffer's advertising. For example, Pearl paid for CarOffer's advertising space at the National Auto Dealers Association trade show in 2014. Pearl also reviewed and wrote press releases regarding CarOffer.

21.     Pearl likewise subleased and paid for the office space for CarOffer where CarOffer operated its headquarters and call center—2701 E. Plano Parkway, Suite 100, Plano Texas, 75074.

22.     CarOffer uses the website at "caroffer.com" to promote its product to consumers. The domain "caroffer.com" was owned by Pearl during the relevant time period in question.

23.     While Pearl has attempted to distance itself from its CarOffer brand, and in fact stated that it is no longer operational, it's own website tells a different story. Specifically, while the "CarOffer" name does not appear on the Pearl website, a new brand called "Trade-In Concierge" does. However, when you click on this new brand logo you are immediately directed to a fully operational CarOffer.com website. Likewise, the CarOffer app remains available for download in the iTunes store.

24.     As such, Pearl simply renamed CarOffer as "Trade-In Concierge," and labeled it as a "new private label online trade-in concierge platform that brings dealers and consumers together within a real-time bidding platform."

25.     Likewise, as recently as February 2015, the CarOffer name appeared prominently on the Pearl advertising booth at the National Automobile Dealers Association ("NADA")

convention and on it promotional materials. (*See* Figure 2.) Notably, in its "new" description of

its CarOffer product, Pearl *only* provides its own website to get more information about a demo

(http://www.pearlsolutions.com/nada). (*See* Figure 1.)



**Figure 1**



**Figure 2**

26.    Finally, CarOffer's "About" page contains the following:

> CarOffer is brought to you by the team at Pearl Technology
> Holdings, LLC, owned and operated by Bruce Thompson. With
> cumulative experience of over sixty years in the automotive
> industry, the Pearl's concepts and technology solutions have been
> instrumental in advancing and revolutionizing the industry, including
> the founding of companies such as American Auto Exchange,
> RedBumper, and NewCarIQ. Pearl's latest venture revolves around
> the notion that today's consumer needs a more flexible, efficient,
> and convenient way to properly sell their car.

## II.    Defendants placed unsolicited prerecorded calls to consumers nationwide to promote CarOffer

27.    To promote the CarOffer product to consumers, Defendants rely on an invasive

and illegal method of advertising: unsolicited telemarketing campaigns.[2]

---

[2] Of course, this is not the first time CarOffer, or some other similarly named entity belonging to
Pearl CEO Bruce Thompson has received complaints about unsolicited telecommunication-based

28.     Specifically, Defendants place unsolicited telephone calls to consumers' phones that feature pre-recorded messages purporting to help consumers sell their vehicles. Defendants makes these calls from several numbers, including "469.606.5167."

29.     Defendants gained access to the phone numbers it used to place these unsolicited pre-recorded calls through the use of a third-party dialing platform hosted by a company called CallFire Inc. ("CallFire"), a company based in Santa Monica, California.

30.     CarOffer entered into a contract with CallFire specifically for the purposes of placing these pre-recorded phone calls to consumers.

31.     At all times, Pearl was aware of the use of the CallFire platform to place prerecorded calls to promote the CarOffer product—Pearl's general counsel and chief financial officer even reviewed the contract between CarOffer and CallFire before it was executed.

32.     When the recipient answers one of these pre-recorded calls placed by CarOffer, the recording states that the call is coming from "CarOffer.com" and that it has "dealers standing by" to give the recipient a cash offer for their vehicle. The promotional recording then describes the features and perks of using its service, including that it is "hassle free" and that there are "no sales commissions" related to the sale of an individual's vehicle. The recording then instructs the

---

advertising. Specifically, in 2010, while Mr. Thompson's previous company Lanelogic, Inc. was doing business under the name CarOffer.com, he and it received a citation from the Federal Trade Commission for violations of the Communications Act of 1934 and the Federal Communications Commission's rules that govern telephone solicitations, prerecorded and autodialed telephone calls and facsimile ("fax") transmissions. The official citation stated "one or more complaints have been filed against your company showing that your company, acting under your direction, committed the violation(s) checked below", which included "Unsolicited Fax Advertisement, Insufficient Opt-Out Notice, Opt-Out Request Not Honored, Prerecorded or Autodialed Call to a Cell Phone, Emergency Line or Health Care Facility, Prerecorded Call to a Residential Line, Prerecorded Line Seizure, Prerecorded Identification Not Provided, National Do-Not-Call, [and] Company-Specific Do-Not-Call." *See* http://transition.fcc.gov/eb/Orders/2010/DOC-312997A1.html (last visited on April 28, 2015).

call recipient to download its mobile software application, "sit back and wait for offer," "drop off

the car," and "collect the check." Again, the purchase offer *does not* come from CarOffer;

instead, it comes from an unrelated third party. Defendants' service is attempting to compete

with Craigslist to aid consumers in selling cars. In essence, Defendants' conduct is no different

than if eBay contacted a consumer selling a car on Craigslist to persuade them to sell the car

through its auction website (where consumers and dealerships are also looking to buy cars).[3]

33.    Consumers who received these calls from Defendants did not provide prior

express written consent to receive such calls. While consumers often place their telephone

numbers on Craigslist, they are provided so that a person, *and only such person*, who is looking

to actually purchase the vehicle can contact them. By contrast, Defendants are not looking to

purchase any vehicles appearing on Craigslist, but instead, are only attempting to sell consumers

their own competing service.

34.    Additionally, when consumers publish an advertisement on Craigslist, they often

check a box indicating that they are not interested in being contacted about other offers or

services. Doing so causes a notice to appear on the individual's Craigslist advertisement that

states—immediately below their contact information—"do NOT contact me with unsolicited

services or offers."

35.    Simply put, consumers do not provide their phone numbers to Defendants.

Instead, Defendants use a method known as "scraping" to collect phone numbers from the online

---

[3]    In fact, Defendants' own website promotes its product as a better alternative (and direct competitor) to Craigslist, stating, "Have a car you'd like to sell? It's a hassle bringing it to a dealer and spending half your day. It's distracting to a much larger degree to put your car on Craigslist and deal with all of the calls, emails for tire kickers. We have the answer to this conundrum." *See How it Works*, http://blog.caroffer.com/how-it-works (last visited on April 28, 2015).

classified website craigslist.com. In order to "scrape" a website, Defendants employs software, commonly referred to as a "bot," to scan webpages that meet certain criteria (in this case, those selling vehicles) for consumers' contact information such as their phone numbers. The bot then collects that information and feeds it back into Defendants' database where it can be used to make calls.

36.     These unscrupulous practices have led to significant backlash from consumers. For instance, a significant number of complaints—such as the following—appear on popular online complaint forums:[4]

- "469-606-5167 left a huckster type message on my machine. They are harvesting numbers from Craigslist if you list your car for sale . . . .";
- "469-606-5167 called trying to get me to tell them all about my car on Craigslist . . . .";
- "This phone number is for caroffer.com. They solicit you because you have something for sale on Craigslist. I have a vehicle for sale that is listed on craigslist.com however I will be reporting them because I have stated very clear that I do not want outside advertising . . . .";
- "Left a voicemail on my cell telling me what steps to take so they can buy my car. Yes, I have an ad on Craigs List, but I recognize spam when I hear it!";
- "It's a canned message from a company that wants to buy your vehicle. I posted one for sale on Craigslist and was called by this company.";
- "They called me yesterday and again just called me (my car is for sale on Craigs[list]).";  and
- "Craigslist Phone Harvester offering to buy your car like carmax paying cash through dealer network".

37.     The consumer complaints are not surprising given that Plaintiff and the other putative Class members did not consent to, request, or otherwise desire or permit Defendants to call their telephones. Indeed, neither Plaintiff, nor the other members of the putative Class, ever

[4]     *See, e.g.*, *800notes Directory of UNKNOWN Callers*, http://800notes.com/Phone.aspx/1-469-606-5167 (last visited April 27, 2015).

consented to receive these robocalls (or any other calls) at the telephone numbers called by
Defendants.

## PLAINTIFF ZILBERMAN'S EXPERIENCE

38.      Starting in or around August 2014, Plaintiff began receiving telephone calls on
his cellular telephone from the phone number "469.606.5167." The calls persisted for three days,
receiving multiple calls each day.

39.      Several of the calls went to his voicemail where Defendants left pre-recorded
messages (substantially similar to those described above). On another occasion, Plaintiff
answered the phone and heard the same pre-recorded message. In total, Plaintiff received at least
six separate calls from Defendants.

40.      At the time he received the calls, Plaintiff had a vehicle listed for sale on
Craigslist. The advertisement listed his cellular telephone number. Immediately below the phone
number appeared a notification stating "do NOT contact me with unsolicited services or offers,"
which Plaintiff affirmatively included on the listing.

41.      Plaintiff only provided his telephone number on the advertisement for persons
legitimately interested in buying his car to call him. Plaintiff did not provide his prior express
written consent to be called by Defendants and did not interact with Defendants in any way prior
to receiving a call from it.

42.      Defendants are and were aware that they were placing unsolicited robocalls to
Plaintiff and other consumers without their prior express written consent.

## CLASS ALLEGATIONS

43.      **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(a),
(b)(2), and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as

follows:

> All persons in the United States who: (1) posted a vehicle for sale on craigslist.com; (2) included the statement "do NOT contact me with unsolicited services or offers" on his or her craigslist.com listing; and (3) who received a telephone call on his or her cellular telephone; (4) promoting CarOffer.com; (5) that featured a pre-recorded or artificial voice.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

44.     **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendants' records.

45.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not limited to the following:

(a)     whether Defendants' conduct violated the TCPA;

(b)     whether Defendants made calls featuring an artificial or pre-recorded voice;

(c)     whether Defendants and/or their agents systematically made phone calls to

persons who did not previously provide Defendants and/or their agents

with their prior express written consent to receive such phone calls; and

(d)    whether Class members are entitled to treble damages based on the

willfulness of Defendants' conduct.

46.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

47.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

48.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendants have acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby requiring the Court's

imposition of uniform relief to ensure compatible standards of conduct toward members of the Class. The factual and legal bases of Defendants' liability to Plaintiff and to the other members of the Class are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the members of the Class have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

49.     **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendants' actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from Defendants. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

50.     Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of 47 U.S.C. § 227**
**(On behalf of Plaintiff and the Class)**

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     Defendants made unsolicited and unwanted telemarketing calls to the telephone numbers belonging to Plaintiff and the other members of the putative Class without their prior express written consent.

53.     Defendants made these unsolicited telemarketing calls to the telephone numbers belonging to Plaintiff and the other members of the Class using a prerecorded or artificial voice, more commonly known as a "robocall."

54.     By making, or having made on its behalf, unsolicited robocalls utilizing an artificial or prerecorded voice to Plaintiff's and the putative Class's telephones without prior express written consent, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' unlawful conduct, Plaintiff and the other members of the Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA.

55.     Should the Court determine that Defendants' misconduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Victor Zilberman, on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Victor Zilberman as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendants' actions, as set out above, violate 47 U.S.C. § 227;

C.      Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D.      An award of actual and statutory damages;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.      Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**VICTOR ZILBERMAN**, individually and on behalf of all others similarly situated,

Dated: April 28, 2015          By:   __/s/  John C. Ochoa_____
                                          One of Plaintiff's Attorneys

Matthew Wurgaft (MW1734)
mattwurgaft@gmail.com
KRAVIS & FILE, P.C.
1 Meadowlands Plaza, Suite 200
East Rutherford, New Jersey 07073
Tel: 201.340.2664
Fax: 201.340.2666

Rafey S. Balabanian*
rbalabanian@edelson.com
Ari J. Scharg (Admitted *pro hac vice*)
ascharg@edelson.com

John C. Ochoa (Admitted *pro hac vice*)
jochoa@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Stefan Coleman*
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN, LLC
1309 Jericho Turnpike, 2nd Floor
New Hyde Park, New York 11040
Tel: 877.333.9427
Fax: 888.498.8946

*Application for admission pro hac vice to be filed.*