**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| VICTOR ZILBERMAN, individually and on behalf of all others similarly situated, | |
| | |
| *Plaintiff*, | Case No. 4:15-cv-00589-ALM |
| | |
| v. | [Hon. Amos L. Mazzant, III] |
| | |
| CAROFFER, LLC, a Delaware limited liability company, and PEARL TECHNOLOGY HOLDINGS, LLC, a Texas limited liability company, | |
| | |
| *Defendants*. | |

## PLAINTIFF'S OPPOSITION TO PEARL TECHNOLOGY HOLDING, LLC'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS

**Respectfully submitted by**:

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
Alicia E. Hwang (Admitted *Pro Hac Vice*)
ahwang@edelson.com
EDELSON PC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

W. Craft Hughes (TX Bar No. 24046123)
craft@hughesellzey.com
Jarrett L. Ellzey (TX Bar No. 24040864)
Jarrett@hughesellzey.com
HUGHES ELLZEY LLP
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Tel. (888) 350-3931
Fax. (888) 995-3335

## TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................1

**STATEMENT OF FACTS** ......................................................................................3

**LEGAL STANDARD** .............................................................................................6

**ARGUMENT** ...........................................................................................................7

**I.    THE COMPLAINT SUFFICIENTLY ALLEGES CLAIMS AGAINST
PEARL UNDER AN ALTER EGO THEORY OF LIABILITY** ....................7

    **A.    Plaintiff Alleges Specific Facts to Demonstrate that Pearl and CarOffer
Operated As a Single Economic Unit, and Pearl Cannot Defeat the
Pleadings With Outside Evidence** ...............................................7

        **1.    The White Declaration is outside evidence that cannot be
considered at this stage** ...........................................................8

        **2.    The Complaint does in fact establish that Pearl and CarOffer
operated as a single economic unit** .........................................9

    **B.    The Complaint Establishes That an Overall Element of Injustice and
Unfairness is Present, and Pearl's Decision to Ignore the Plain
Allegations Doesn't Make Them Any Less Significant** ....................11

**II.   PLAINTIFF'S CLAIMS AGAINST PEARL SHOULD NOT BE
STAYED PURSUANT TO THE BANKRUPTCY CODE OR THIS
COURT'S DISCRETION** .................................................................13

    **A.    Plaintiff's Claims Against Pearl Do Not Fall Under CarOffer's
Automatic Bankruptcy Stay** .......................................................14

    **B.    Continued Litigation Would Not Cause Undue Prejudice to Pearl or
CarOffer's Bankruptcy Estate** ...................................................15

**CONCLUSION** ......................................................................................................17

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)......................................................................................6

*Landis v. North American Co.,*
   299 U.S. 248 (1936)......................................................................................7

**United States Circuit Court of Appeals Cases**

*Alberto v. Diversified Group, Inc.,*
   55 F.3d 201 (5th Cir. 1995) .........................................................................9

*Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*,
   296 F.3d 164 (3d Cir. 2002).......................................................................14

*GATX Aircraft Corp. v. M/V Courtney Leigh,* 7
   68 F.2d 711 (5th Cir. 1985) ...................................................................14, 15

*Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC,*
   255 F. App'x 775 (5th Cir. 2007) ..............................................................8-9

*Gibraltar Sav. v. LDBrinkman Corp.*,
   860 F.2d 1275 (5th Cir. 1988) ....................................................................15

*In re Schimmelpenninck,*
   183 F.3d 347 (5th Cir. 1999) ......................................................................14

*In re S. Scrap Material Co., LLC,*
   541 F.3d 584 (5th Cir. 2008) ........................................................................6

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC,*
   537 F.3d 168 (2d Cir. 2008).............................................................10 n.4, 12

*Ramming v. United States,*
   281 F.3d 158 (5th Cir. 2001) ........................................................................6

*Wedgeworth v. Fibreboard Corp.*,
   706 F.2d 541 (5th Cir. 1983) ...........................................................6-7, 15, 16

**United States District Court Cases**

*Allison v. Clos-ette Too, LLC*,
   2015 WL 136102 (S.D.N.Y. Jan. 9, 2015) .................................................11

*ASARCO LLC v. Americas Mining Corp.,*
    396 B.R. 278 (S.D. Tex. 2008) ...................................................................11

*Beran v. World Telemetry, Inc.,*
    747 F. Supp. 2d 719 (S.D. Tex. 2010) ................................................15, 16

*DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.,*
    2014 WL 585750 (S.D. Tex. Feb. 14, 2014) ............................................. 7-8

*G & G Closed-Circuit Events, LLC. v. Houston Hobby Investments, Inc.,*
    59 F. Supp. 3d 781 (N.D. Tex. 2014) ........................................................9

*Hamilton v. Am. Corrective Counseling Servs., Inc.,*
    2009 WL 973447 (N.D. Ind. Apr. 8, 2009) ............................................14

*Harper v. Delaware Valley Broadcasters, Inc.,*
    743 F. Supp. 1076 (D. Del. 1990)...............................................................9

*Maldonado v. City of Pearsall, Tex.,*
    977 F. Supp. 2d 646 (W.D. Tex. 2013).......................................................8

*Nat'l Oilwell Varco, L.P. v. Mud King Products, Inc.,*
    2013 WL 1948766 (S.D. Tex. May 9, 2013) ..............................................7

*Sears, Roebuck & Co. v. Sears,*
    744 F. Supp. 1297 (D. Del. 1990) ........................................................ 11-12

*Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC,*
    842 F. Supp. 2d 502 (S.D.N.Y. 2012) ...........................................10 n.5, 11

*Piraino v. U.S. Postal Serv.,*
    69 F. Supp. 2d 889 (E.D. Tex. 1999 ....................................................6 n.3

*Tolliver v. YRC Worldwide Inc.,*
    2014 WL 929029 (N.D. Tex. Mar. 10, 2014) ...........................................9

*Trevino v. Merscorp, Inc.,*
    583 F. Supp. 2d 521 (D. Del. 2008)....................................................7, 11

*Whiddon v. Chase Home Fin., LLC,*
    666 F. Supp. 2d 681 (E.D. Tex. 2009)........................................................6

## United States Bankruptcy Court Cases

*In re Divine Ripe, L.L.C.*,
　538 B.R. 300 (Bankr. S.D. Tex. 2015) ........................................................7, 14

*In re Eads*,
　135 B.R. 387 (Bankr. E.D. Cal. 1991)..............................................................16

*In re Foxmeyer Corp.*,
　290 B.R. 229 (Bankr. D. Del. 2003) ................................................................11

*In re Heritage Org., LLC*,
　2008 WL 5215688 (Bankr. N.D. Tex. Dec. 12, 2008) ............................... 10-11

*In re Kilroy*,
　357 B.R. 411 (Bankr. S.D. Tex. 2006) .......................................................13 n.6

*In re Salem Mills, Inc.*,
　148 B.R. 505 (Bankr. N.D. Ill. 1992) ..............................................................16

## State Court Cases

*Geyer v. Ingersoll Publication Company*,
　621 A.2d 784 (Del. Ch. 1992) .........................................................................10

*Mey v. The Pep Boys - Manny, Moe & Jack*,
　2010 WL 8947780 (W. Va. Cir. Ct., Jan. 5, 2010) ..........................................12

*Trustees of Village of Arden v. Unity Constr. Co.*,
　2000 WL 130627 (Del.Ch. Jan. 26, 2000)..................................................10 n.4

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
　752 A.2d 1175 (Del. Ch. 1999)..........................................................................7

## INTRODUCTION

Plaintiff Victor Zilberman, individually, and on behalf of the putative class he seeks to represent, seek to hold Defendants CarOffer, LLC ("CarOffer") and Pearl Technology Holdings, LLC ("Pearl") liable for systematically and willfully violating the Telephone Consumer Protection Act ("TCPA") by placing tens of thousands of unsolicited robocalls to consumers to promote its online "automotive marketplace." Far from denying that it did anything wrong, Pearl attempts to hide behind the corporate form by arguing that it was CarOffer—and not Pearl—who made the unauthorized calls, and because they are separate and distinct entities, Plaintiff cannot establish that they are alter egos of one another. Pearl's position is that Plaintiff fails to meet the alter-ego pleading standard because he cannot show that the two companies acted as a "single economic unit," or that there is an "an overall element of injustice or unfairness" with respect to Pearl's use of CarOffer's corporate form. As explained below, however, Pearl and CarOffer are for all intents and purposes, one and the same, and under the law, there is no doubt that Pearl is the alter ego of CarOffer.

First, all of Pearl's arguments regarding Plaintiff's supposed failure to plead that Defendants are a "single economic unit" are based upon self-serving testimony that it attempts to introduce through a declaration. It is well established that such outside evidence cannot be considered at the pleadings stage, especially when introduced solely to contradict well-pled allegations of fact as it is here. But even assuming, *arguendo*, that Pearl could rely on such outside evidence, the declaration does nothing to rebut Plaintiff's well-pleaded allegations that Pearl controlled every aspect of the CarOffer service, that the companies shared the same owner and same management, that the intellectual property at issue was owned by Pearl and there were no written licensing agreements between the two companies, and that CarOffer was severely

undercapitalized and had no assets, insurance, or office space of its own. These allegations of

fact are more than sufficient to satisfy the single economic unit analysis, and Pearl simply can't

claim otherwise (nor does it even attempt to).

Second, the Complaint demonstrates with specificity exactly how Pearl misused

CarOffer's corporate form to avoid TCPA liability, which is more than enough to establish the

presence of "an overall element of injustice or unfairness." As discussed in detail below, Bruce

Thompson—the sole owner and managing member of Pearl—is no stranger to the TCPA. In fact,

he previously marketed the CarOffer service through a different subsidiary that was ultimately

sued over the exact same TCPA telemarketing violations that are at issue in this case. Thompson

responded by shutting that subsidiary down and organizing a fresh company, CarOffer, LLC, to

continue selling the service. Now history is repeating itself—Thompson used CarOffer to place

illegal TCPA calls, and now that his companies have been sued, he is once again attempting to

evade liability by shutting down a subsidiary and forming a new one (this time called Trade-In

Concierge, LLC) to sell the exact same service. The fact that Pearl (and more to the point,

Thompson) simply changed the name of its CarOffer service to Trade-In Concierge after this

lawsuit was filed, and continued to sell the service as before, demonstrates that CarOffer, LLC

was a sham company that Pearl (and Thompson) organized to circumvent liability under the

TCPA.

Finally, there is no reason to stay the case against Pearl during CarOffer's bankruptcy

proceedings. True, to preserve the bankruptcy estate for creditors, the automatic stay will

sometimes extend to alter-ego codefendants of a debtor. But here, the only creditor is Pearl, and

thus, there is no concern that the litigation will prejudice any of CarOffer's third party creditors

because there are none. And besides that, Pearl fails to identify any burden or hardship that it

would face if litigation were to continue before the bankruptcy proceedings conclude.

For these reasons, and as further explained below, Pearl's motion to dismiss and request to stay the litigation should be denied.

## STATEMENT OF FACTS

### *A Brief Overview About Pearl Technology Holdings And The "CarOffer" Service*

Pearl touts itself as "an automotive technology incubator" whose mission is to "develop and distribute multiple software initiatives across different sectors of the automotive industry." (*See* First Amended Complaint ["Compl."], Dkt. 24, ¶ 2.) The owner and sole managing member of Pearl is Bruce Thompson. (*Id.* ¶ 17.) Pearl operates and sells its services—virtual platforms designed to assist car dealerships with sales—through several wholly-owned subsidiaries.[1] (*Id.* ¶ 16.) Relevant here, Pearl operated and sold its "CarOffer" service under the banner of CarOffer, LLC. (*Id.* ¶¶ 1-2, 18.) The CarOffer service was designed to match dealerships that wanted to increase their inventory with consumers looking to sell their used cars. (*Id.* ¶ 15.)

Despite that Pearl organized CarOffer as a wholly-owned subsidiary, it controlled and managed all aspects of its business and operations. (Compl. ¶¶ 16-25) In fact, Pearl was CarOffer's sole member and owner (*id.* ¶ 18), developed, operated, and owned the CarOffer website domain and mobile application (*id.* ¶¶ 2, 18, 22), created, designed, and controlled all of CarOffer's marketing and promotions, including its press releases and the unlawful calls at issue in this case (*id.* ¶¶ 2, 20, 25), approved the contract between CarOffer and CallFire—the third-party that was hired to place the unlawful robocalls at issue in this case—before it was executed, (*id.* ¶ 31), shared and paid for CarOffer's office space (*id.* ¶¶ 8, 9, 21), and owned and controlled all of the trade marks and intellectual property that CarOffer used in its business (*id.* ¶ 19).

---

[1] *See* http://www.pearlsolutions.com/news/ (last accessed Oct. 30, 2015.)

Further, Pearl had no paid employees of its own, and the same individual—Bruce Thompson—was the sole owner and manager of both companies. (*Id*. ¶ 17.)

### Pearl's Unlawful Spam Telemarketing Campaign

To promote the CarOffer service to consumers—and drive up the number of vehicles listed through its mobile platform—Pearl placed spam telemarketing robocalls calls to the cell phones of consumers across the country. (Compl. ¶ 3.) The spam calls each contained pre-recorded messages instructing recipients to download the CarOffer software application so that they could "sit back and wait for an offer," "drop off the car," and "collect the check." (*Id*. ¶ 32.) None of the individuals that were called ever provided their phone numbers to Pearl or CarOffer, nor provided their prior express written consent to receive telemarketing calls. (*Id*. ¶ 33.) Rather, Pearl collected the phone numbers by "scraping" (i.e., secretly collecting) them from online classified advertisements as that were posted on the website craigslist.com. (*Id*. ¶ 35.) To do this, Pearl utilized software (commonly referred to as a "bot") to scan the webpages and collect phone numbers associated with each of the posted automotive ads. (*Id*.) Pearl then used an automatic telephone dialing system to robocall these numbers en masse. (*Id*.)

Plaintiff Zilberman is one of the tens of thousands of individuals that received numerous spam robocalls from Pearl in violation of the TCPA. (Compl. ¶¶ 38-42.) In response, on October 17, 2014, Plaintiff initiated this lawsuit in the Eastern District of New York against RedBumper, LLC, the entity he believed was responsible for the spam calls. (Dkt. 1.) After conducting limited jurisdictional discovery, which included the deposition of David White, RedBumper's Chief Financial Officer and General Counsel, Plaintiff dismissed RedBumper and named Pearl and CarOffer, LLC as defendants in the case. (Dkts. 8, 24.) The case was then transferred to the Eastern District of Texas by stipulation on July 17, 2015. (Dkts. 31, 32.)

***Pearl Renamed Its CarOffer Service "Trade-In Concierge" And The Service Is Thriving***

To avoid disruption to its business after this lawsuit was filed, Pearl renamed the CarOffer service "Trade-In Concierge" and moved the service over to a new wholly-owned subsidiary called Trade-In Concierge, LLC. (Compl. ¶ 24.) Despite the name change, Trade-In Concierge is identical to CarOffer, and besides swapping out the names, Pearl used the exact same marketing materials for the service as it did before. (*Id*. ¶¶ 23-24.)



(*See* Compl. ¶ 25, **Figure 1**; *cf.* Trade-In Concierge Advertisement.)

Initially, users who clicked the Trade-In Concierge logo on Pearl's website were simply redirected to the CarOffer website. (*Id*. ¶ 23, 24.)[2]

***Plaintiff's Alter-Ego Allegations Are Both Confirmed And Bolstered By CarOffer, LLC's Recent Bankruptcy Filing***

On June 18, 2015, seven weeks after being named in Plaintiff's Complaint, CarOffer, LLC filed for bankruptcy in the Eastern District of Texas. (*See* Notice of Filing Bankruptcy, Dkt.

---

[2] The link has since been changed and no longer redirects to the CarOffer URL. Instead, clicking on the Trade-In Concierge icon simply redirects to a (word-for-word) identical advertisement previously used by CarOffer.
http://static1.squarespace.com/static/54a1b4dbe4b0b2b298024caf/t/55c0ff84e4b07af739788af4/1438711684226/TIC-OneSheet.pdf (last accessed Oct. 27, 2015).

27.) In its bankruptcy papers, CarOffer confirmed that Pearl was its sole member and 100%

owner and that Bruce Thompson was "the sole manager and Chief Executive Officer and

President of CarOffer." (Dkt. 27-1.)[3] It likewise confirmed that CarOffer was severely

undercapitalized—it had only $163.29 in a checking account (*id.* at p. 9) and did not carry any

insurance or own any licenses, intellectual property, or customer lists (*id.* at p. 11). Nor did it

have any secured creditors. (*Id.* at p. 12.)

CarOffer likewise disclosed that it had no written agreements with Pearl, and that it

terminated an "oral sublease" with Redbumper, and "oral license agreements" with Pearl, in

October 2014 (when it ceased operations). (*Id.* at p. 23.) The filing also showed that Pearl paid a

total of $4,335 for CarOffer's bankruptcy costs and filing fees. (*Id.* at p. 22.)

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests "the formal sufficiency of the statement of

a claim for relief," *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001), and should be

granted only when the complaint does not give the defendant fair notice of a legally cognizable

claim and the grounds on which it rests. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). It

is not a procedure for resolving contests about the facts or the merits of a case. *Whiddon v. Chase

Home Fin., LLC,* 666 F. Supp. 2d 681, 685-86 (E.D. Tex. 2009). When ruling on a Rule 12(b)(6)

motion to dismiss, the court must accept the factual allegations of the complaint as true and draw

all reasonable inferences in favor of the plaintiff. *In re S. Scrap Material Co., LLC,* 541 F.3d

584, 587 (5th Cir. 2008).

In determining whether to grant a discretionary stay, courts must exercise judgment to

"weigh competing interests and maintain an even balance." *Wedgeworth v. Fibreboard Corp.,*

---

[3] The Court may take judicial notice of this information because it is a matter of public record.
*See Piraino v. U.S. Postal Serv.,* 69 F. Supp. 2d 889, 893 (E.D. Tex. 1999).

706 F.2d 541, 545 (5th Cir. 1983) (internal citations and quotations omitted). "A stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved and if the order granting a stay can be framed to contain reasonable limits on its duration." *Nat'l Oilwell Varco, L.P. v. Mud King Products, Inc.*, 2013 WL 1948766, at *2-3 (S.D. Tex. May 9, 2013). The party requesting the stay has the burden of justifying that it should be applied. *In re Divine Ripe, L.L.C.*, 538 B.R. 300, 309 (Bankr. S.D. Tex. 2015) (citing *Landis v. North American Co.,* 299 U.S. 248, 255 (1936)).

## ARGUMENT

### I. THE COMPLAINT SUFFICIENTLY ALLEGES CLAIMS AGAINST PEARL UNDER AN ALTER EGO THEORY OF LIABILITY.

To establish an alter ego theory of liability at the pleadings stage, the plaintiff must allege facts to show that (1) the parent and subsidiary "operated as a single economic unit," and (2) "an overall element of injustice or unfairness is present" in the parent's use of the subsidiary. *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 528 (D. Del. 2008). Pearl argues that Plaintiff failed to satisfy either element. As explained below, Pearl's arguments should be rejected.

### A. Plaintiff Alleges Specific Facts to Demonstrate that Pearl and CarOffer Operated As a Single Economic Unit, and Pearl Cannot Defeat the Pleadings With Outside Evidence.

The "operated as a single economic unit" element is satisfied where the parent exercises "complete domination and control" over the subsidiary, such that the subsidiary lacks any "legal or independent significance of its own." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999). Further, at the pleadings stage, the issue "is not whether Plaintiff may ultimately prevail on the 'piercing the corporate veil' theory, but whether the allegations are sufficient to allow it to conduct discovery in an attempt to prove its

allegations." *DAC Surgical Partners P.A. v. United Healthcare Servs., Inc.*, 2014 WL 585750, at *5 (S.D. Tex. Feb. 14, 2014). Importantly, Pearl's argument with respect to this element has nothing to do with the specific facts alleged in the Complaint. Instead, Pearl attempts to dispute Plaintiff's well-pleaded allegations by submitting outside testimony in the form of a declaration. As discussed below, Pearl's outside evidence cannot be considered at the pleadings stage, especially when it is submitted for the sole purpose of rebutting the complaint's allegations.

### 1.   The White Declaration is outside evidence that cannot be considered at this stage.

When considering a 12(b)(6) motion, "review is limited to the contents of the complaint and matters properly subject to judicial notice." *Maldonado v. City of Pearsall, Tex.*, 977 F. Supp. 2d 646, 648-49 (W.D. Tex. 2013). Here, however, Pearl's entire challenge to the first element of the alter-ego pleading standard is based upon a declaration submitted by its Chief Financial Officer, David White. Through that declaration, White testifies that: (i) CarOffer maintained corporate formalities to keep its business separate from Pearl's; (ii) the companies had their own operational managers and employees and did not commingle funds; (iii) CarOffer operated without the day-to-day involvement of Pearl; (iv) and Pearl's business dealings with CarOffer occurred at arm's-length. (Dkt. 38, pp. 25-26.) With nothing more than this bald and conclusory testimony, Pearl says that the case should be dismissed because "none of the alleged connections between Pearl and CarOffer reveal anything more than a typical relationship between parent and subsidiary." (*Id.* at 9.) The Court should reject Pearl's attempt to contradict the well-plead allegations with White's self-serving declaration.

It is well settled that courts cannot consider matters outside of the pleadings—such as a declaration—to challenge the pleadings without converting the motion into one for summary judgment. *See Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785

(5th Cir. 2007); *Tolliver v. YRC Worldwide Inc.*, 2014 WL 929029, at *2 (N.D. Tex. Mar. 10, 2014); *G & G Closed-Circuit Events, LLC. v. Houston Hobby Investments, Inc.*, 59 F. Supp. 3d 781, 784 (N.D. Tex. 2014) (rejecting defendant's attempt to challenge the sufficiency of the allegations at the pleadings stage with a declaration was "outside of the pleadings.") Further, documents attached to a motion to dismiss are considered part of the pleadings only "if they are referred to in the plaintiff's complaint and are central to [the] claims." *Id.* at 783 (internal citations and quotations omitted).

Here, the White Declaration cannot be considered for two reasons. First, it is obviously not central to the pleadings, and Pearl doesn't even try to make an argument that it is. Second, the declaration purports to introduce outside evidence for the purpose of refuting Plaintiff's factual allegations, which the Court must accept as true at this stage. As such, the Court should reject Pearl's new self-serving evidence.

2.    **The Complaint does in fact establish that Pearl and CarOffer operated as a single economic unit.**

In any event, an examination of the pleadings shows that Plaintiff adequately alleges that the two companies operated as a single economic unit. In making this determination, courts look to a number of factors "which reveal how the corporation operates and the particular [party's] relationship to that operation." *Harper v. Delaware Valley Broadcasters, Inc.,* 743 F. Supp. 1076, 1085 (D. Del. 1990). These factors include: (1) whether the corporation was adequately capitalized for the corporate undertaking; (2) whether the corporation was solvent; (3) whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; (4) whether the dominant shareholder siphoned corporate funds; and (5) whether, in general, the corporation simply functioned as a facade for the dominant shareholder. *Alberto v. Diversified Group, Inc.,* 55 F.3d 201, 205 (5th Cir.1995).

Where a subsidiary is in fact a mere instrumentality or alter ego of its owner, a court can pierce the corporate veil. *Geyer v. Ingersoll Publication Company,* 621 A.2d 784, 793 (Del. Ch. 1992).

Here, Plaintiff establishes that each of these factors weigh heavily in favor of an alter ego finding, and show that CarOffer was as a mere instrumentality of Pearl, and that the two companies were acting as a single economic unit. To begin, Pearl developed, operated, and owned the CarOffer website domain and mobile application, as well as CarOffer's trademarks (Compl. ¶¶ 2, 18, 19, 22), had no employees of its own (and shared a sole owner and manager with CarOffer—Bruce Thompson) (*id*. ¶ 17), created and controlled CarOffer's marketing and promotional materials (*id*. ¶ 20), reviewed and approved its third party contracts (*id*. ¶ 31), and both shared and paid for the office space in which CarOffer operated (*id*. ¶ 21). Further, CarOffer failed to keep its own corporate records or abide by legal formalities: its leasing and licensing agreements with Pearl were informal and were all "oral" (Dkt. 27-1, p. 23), and RedBumper and Pearl employees (and not CarOffer itself) kept and maintained CarOffer's books and accounts (*id*. at p. 25).[4] Additionally, CarOffer's bankruptcy papers indicate that its assets at the time of filing consisted of only $163.29 in a checking account, and further, that it did not own any licenses, intellectual property, customer lists or other property or insurance.[5] (*Id*. at p. 9-11.)

These allegations are more than sufficient to show that Pearl and CarOffer operated as one. *See, e.g., In re Heritage Org., LLC,* 2008 WL 5215688, at *25 (Bankr. N.D. Tex. Dec. 12,

---

[4] In applying an alter ego veil piercing analysis to limited liability companies, "somewhat less emphasis is placed on whether the LLC observed internal formalities because fewer such formalities are legally required." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC,* 537 F.3d 168, 178 (2d Cir. 2008). As such, "if two entities with common ownership 'failed to follow legal formalities *when contracting with each other*' it would be tantamount to declaring that they are indeed one [and] the same.'" *Id.* (quoting *Trustees of Village of Arden v. Unity Constr. Co.,* 2000 WL 130627, at *3 (Del.Ch. Jan. 26, 2000)) (emphasis in original).

[5] Courts have found that an entity's complete lack of assets at the time of insolvency to be a factor weighing in support of piercing the veil. *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC,* 842 F. Supp. 2d 502, 522 (S.D.N.Y. 2012).

2008) (finding usage of "an oral sublease terminable at will" for lease of office space between purported alter ego entities sufficient to establish that agreements were made without legal formalities such that there was genuine issue of material fact as to whether entity operated as façade); *Soroof Trading,* 842 F. Supp. 2d at 522 (piercing veil when limited liability company had none of its own employees, parent leased its office space, and office space did not have signage or plaque indicating presence of LLC, only that of parent); *ASARCO LLC v. Americas Mining Corp.,* 396 B.R. 278, 318-319 (S.D. Tex. 2008) (finding single business enterprise when parent was a shell corporation whose sole purpose was to hold the subsidiary stock; had no other assets or debts besides ownership of subsidiary, did not engage in any business or activity other than the ownership of subsidiary stock, had no separate office space and no employees, and did not maintain separate corporate formalities); *Allison v. Clos-ette Too, LLC*, 2015 WL 136102, at *4 (S.D.N.Y. Jan. 9, 2015) (finding single economic entity when *inter alia* companies shared a sole owner, failed to document intercompany loans and payments, shared office space and telephone numbers, employees performed work for both companies but were only compensated by one, and one entity paid the full rent of the shared office space). Accordingly, Plaintiff adequately pleads the first element of his alter-ego claims.

**B.    The Complaint Establishes That an Overall Element of Injustice and Unfairness is Present, and Pearl's Decision to Ignore the Plain Allegations Doesn't Make Them Any Less Significant.**

To satisfy the second element of the veil piercing analysis, a plaintiff must show the presence of "an overall element of injustice or unfairness." *In re Foxmeyer Corp.*, 290 B.R. 229, 235 (Bankr. D. Del. 2003). The fraud or injustice that must be demonstrated in order to pierce a corporate veil law must be found in the defendant's use of the corporate form. *Trevino*, 583 F. Supp. 2d at 530; *see also Sears, Roebuck & Co. v. Sears,* 744 F. Supp. 1297, 1304 (D. Del. 1990)

11

("In order to reach a parent corporation under the alter-ego theory, the plaintiff must show fraud, injustice, or inequity in the use of the corporate form.") It is not necessary "to prove that the corporation was created with fraud or unfairness in mind," rather, "it is sufficient to prove that it was so used." *NetJets Aviation,* 537 F.3d at 177. In determining whether there is sufficient evidence of fraud or unfairness, the court may take into account evidence that is also pertinent to the question of whether the two entities in question functioned as one." *Id*. at 183.

Here, Pearl argues that Plaintiff's alter ego theory fails because he failed to allege that CarOffer was created for the sole purpose of shielding it from liability. (Def. Mot. 11.) But that's exactly what Plaintiff alleges, as he pleads that Pearl utilized CarOffer's corporate form for the very purpose of evading TCPA liability, and Pearl's argument to the contrary simply ignores the allegations.

First, the Complaint demonstrates that Pearl and CarOffer's owner and CEO, Bruce Thompson, was aware that the robocalls at issue violated the TCPA. Thompson previously owned and operated an entity called Lanelogic, Inc.—which also conducted business under the name CarOffer.com—that was cited in 2010 by the Federal Trade Commission for violating federal rules governing telephone solicitations, *for the very same conduct*. (*See* Compl. ¶ 27, n. 2.) Public records also show that a TCPA class action was filed against LaneLogic that same year. *See Mey v. The Pep Boys - Manny, Moe & Jack*, 2010 WL 8947780 (W. Va. Cir. Ct., Jan. 5, 2010) ("Plaintiff filed her class action complaint [] claiming that Defendants Pep Boys, Southwest Vehicle Management, Inc. and Lanelogic Inc. d/b/a Caroffer.com violated the Federal Telephone Consumer Protection Act when [they] allegedly left Plaintiff a prerecorded voicemail message at her residence in response to a classified ad that was posted on the Internet website craigslist.com.") Accordingly, the fact that Thompson chose to proceed with the same illegal

telemarketing scheme—simply with a different limited liability entity—demonstrates his fraudulent intent.

Second, Pearl's exploitation of the corporate form is evidenced by the interchangeable (and replaceable) nature of its CarOffer product. In addition to previously operating LaneLogic as CarOffer, Pearl renamed CarOffer as "Trade-In Concierge" after Plaintiff filed his Complaint. (Compl. ¶¶ 23-24.) Trade-In Concierge used nearly identical promotional images and clicking on the Trade-In Concierge logo on Pearl's website merely directed users to the previous (and at one time, fully operational) CarOffer.com website. (*Id*. ¶ 23.) CarOffer's name, however, continued to remain on Pearl's promotional materials for several months, even appearing on its advertising booth at the National Automobile Dealers Association convention. (*Id*. ¶ 25; Figure 2.) Thompson's history of citations and discontinued entities show that Pearl intended to use CarOffer's corporate form to shield it from liability for its illegal conduct, and further, that it is using CarOffer for that precise purpose right now.[6]

Accordingly, Pearl's motion for dismissal should be denied.

## II. PLAINTIFF'S CLAIMS AGAINST PEARL SHOULD NOT BE STAYED PURSUANT TO THE BANKRUPTCY CODE OR THIS COURT'S DISCRETION

As an alternative, Pearl argues that Plaintiff's claims against it should be stayed because, purportedly, (i) his alter-ego claims against Pearl seek to indirectly recover from CarOffer and would violate the bankruptcy stay (which should be extended over Plaintiff's claims against Pearl); and (ii) continued litigation would cause undue prejudice to both Pearl and CarOffer's bankruptcy estate. Neither of its arguments are supported by the law and neither are availing.

---

[6] Though Pearl claims that "CarOffer was organized for the very legitimate business purpose of operating its own 'web-based marketplace,'" (Def. Mot. 11-12), the fact that CarOffer may have been a legitimate company in certain respects does not preclude an alter-ego finding. *In re Kilroy*, 357 B.R. 411, 429 (Bankr. S.D. Tex. 2006).

### A.    Plaintiff's Claims Against Pearl Do Not Fall Under CarOffer's Automatic Bankruptcy Stay.

First, Pearl is wrong that the bankruptcy stay should be applied simply because it is an alter-ego of the debtor. The purpose of the Section 362 bankruptcy stay is to protect the debtor's assets so that they can be equitably distributed amongst the creditors. *GATX Aircraft Corp. v. M/V Courtney Leigh,* 768 F.2d 711, 716 (5th Cir. 1985). To that end, claims against an alter-ego of the debtor may be stayed when (1) they belong to the corporate debtor, or (2) the plaintiff's cause of action seeks to recover or control property of the debtor. *In re Schimmelpenninck*, 183 F.3d 347, 355 (5th Cir. 1999). The party invoking the stay has the burden to show that it should apply. *In re Divine*, 2015 WL 5609902, at *1.

Here, Pearl fails to assert any argument whatsoever to show that either exception applies, but in any event, Plaintiff can show that neither does. First, Plaintiff's claims do not belong to CarOffer (the corporate debtor) because Plaintiff asserts particularized injury under the TCPA that is not common to CarOffer's creditors. *See Hamilton v. Am. Corrective Counseling Servs., Inc.*, 2009 WL 973447, at *3-4 (N.D. Ind. Apr. 8, 2009) ("The plaintiffs' alter ego claims are based on a particularized injury, not a generalized injury common to all creditors and the corporation, so their claims aren't the property of the bankruptcy estate [and] don't fall within the ambit of the automatic stay"); *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171 (3d Cir. 2002); *In re Divine Ripe*, 2015 WL 5609902 at *8. Second, there is no concern that the lawsuit will dilute the bankruptcy estate to the detriment of CarOffer's creditors because CarOffer has no other creditors besides Pearl. And thus, the typical reason for staying claims against an alter-ego (i.e., to preserve the assets of the bankruptcy for the debtor's creditors) isn't present.

Beyond that. courts have been hesitant to apply the automatic stay where, as here, the

claim is raised by the alter-ego party itself with an interest in the bankruptcy estate. *See, e.g., Gibraltar Sav. v. LDBrinkman Corp.*, 860 F.2d 1275, 1285-86 (5th Cir. 1988) (distinguishing *S.I. Acquisition* and noting that "[h]ere it is the alleged "alter ego" entity itself [not the bankruptcy trustee] that challenges the creditor-plaintiff's attempt to penetrate the corporate veil . . . An extension of *S.I. Acquisition* in [the entity's] favor would mean that allegedly liable "alter egos" could escape liability should the trustee for a "shell" corporation which it (the alleged "alter ego") has thrown into bankruptcy simply choose not to prosecute a potentially meritorious "alter ego" claim.").

Accordingly, Pearl's request for an extension of the bankruptcy stay should be denied.

### B.     Continued Litigation Would Not Cause Undue Prejudice to Pearl or CarOffer's Bankruptcy Estate.

Next, the Court should deny Pearl's request for a discretionary stay because it has failed to show that continued litigation would cause undue prejudice. While a court may exercise its discretion to stay a proceeding against non-bankrupt codefendants "in the interests of justice and in control of their dockets," *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 545 (5th Cir. 1983), a "stay can be justified only if, based on a balancing of the parties' interests, there is a clear inequity to the suppliant who is required to defend while another action remains unresolved," *GATX Aircraft Corp.,* 768 F.2d at 716. To justify staying the litigation, the potential hardships to the non-bankrupt defendants must outweigh the plaintiff's interests in proceeding. *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 722-725 (S.D. Tex. 2010).

Here, Pearl fails to identify any supposed hardships that would outweigh Plaintiff's interests in proceeding forward with the litigation. First, Pearl claims that it would be prejudiced because it would be unable to fairly defend itself in the litigation since "all of the relevant documents are now controlled by CarOffer's bankruptcy trustee." (Def. Mot. 15.) This argument

15

is both unsupported and disingenuous. First, the Complaint alleges Pearl's direct participation

and involvement in the conduct at issue, and thus, there is no basis to believe Pearl's claim that

"all of the relevant documents" would be solely within CarOffer's control. Further, a review of

CarOffer's bankruptcy docket reveals that Pearl recently purchased all of CarOffer's available

business assets, including its workstations and computers. *See In re CarOffer, LLC*, No. 15-

41038, Dkt. 9 (Bankr. S.D. Tex. June 4, 2015). As such, many if not all of the relevant

documents are in Pearl's possession. And beyond those documents, CallFire—the third party call

platform that routed the calls at issue—will likely have relevant evidence as well. (Compl. ¶¶ 29-

30.) In any event, Pearl's potential inability to obtain relevant documents is not a "hardship" and

certainly does not evidence undue prejudice. *See Beran v. World Telemetry, Inc.*, 747 F. Supp. at

722-25 ("Nor does this court find that a discretionary stay is appropriate . . . The inability to

subpoena documents from World Telemetry would prejudice Beran more than the individual

defendants, who are present and former officers of the company.")

       Pearl's argument that it would be unfair to allow Plaintiff to litigate his claims when it is

barred from filing indemnification or defensive cross-claims against CarOffer is similarly

unavailing, as Pearl remains able to file indemnification and cross-claims claims against

CarOffer in bankruptcy court *See In re Salem Mills, Inc*., 148 B.R. 505, 509 (Bankr. N.D. Ill.

1992); *In re Eads*, 135 B.R. 387, 390 (Bankr. E.D. Cal. 1991). Nor does Pearl explain in any way

how its perceived hardships outweigh Plaintiff's interests in pursuing his claims such that a stay

would be warranted. *See Wedgeworth,* 706 F.2d at 546 ("Defendants have not shown that any

hardship complained of is the result of proceeding to trial now . . . Nor is there a showing that the

difficulties inherent in the general situation, including potential judicial inefficiency, constitute a

sufficient offset to the plaintiffs' right to proceed without inordinate delay to resolution of their

claims.") Accordingly, as Pearl fails to show that the balance of equities would be better served by staying the litigation, its request to stay should be denied.

## <u>CONCLUSION</u>

For the foregoing reasons, Pearl's Motion to Dismiss or, in the Alternative, Stay the Proceedings should be denied in its entirety.

Respectfully submitted,

**VICTOR ZILBERMAN**, individually and on behalf of all others similarly situated,

Dated: October 30, 2015

By:/s/ Ari J. Scharg
 One of Plaintiff's Attorneys

Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Ari J. Scharg (Admitted *Pro Hac Vice*)
ascharg@edelson.com
Alicia E. Hwang (Admitted *Pro Hac Vice*)
ahwang@edelson.com
EDELSON PC
350 N. LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

W. Craft Hughes (TX Bar No. 24046123)
craft@hughesellzey.com
Jarrett L. Ellzey (TX Bar No. 24040864)
Jarrett@hughesellzey.com
HUGHES ELLZEY LLP
2700 Post Oak Blvd., Suite 1120
Houston, Texas 77056
Tel. (888) 350-3931
Fax. (888) 995-3335

## CERTIFICATE OF SERVICE

I, Ari J. Scharg, an attorney, hereby certify that on October 30, 2015, I served the above and foregoing ***Plaintiff's Opposition to Defendant Pearl's Motion to Dismiss or in the Alternative to Stay Proceedings*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this 30th day of October 2015.

/s/ Ari J. Scharg